# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 5726 | DATE | 7/20/2004 |
| CASE TITLE | Valadez vs. Steiner Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter order. Plaintiff's motion for summary judgment [51-1] is denied. Defendant's motion for summary judgment [53-1, 55-1] is granted. Case Terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUL 22 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | docketing deputy initials | 123 |
| X | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | date mailed notice | |
| | courtroom deputy's initials | 2004 JUL 21 AM 9:12 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAVIER VALADEZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> STEINER CORP., a Nevada Corporation, ) <br> d/b/a AMERICAN LINEN ) <br> ) <br> Defendant. ) <br> ) | Case No. 01-C-5726 <br><br> Judge Joan B. Gottschall |

DOCKETED
JUL 2 2 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Javier Valadez has sued his employer, Steiner Corp. d/b/a American Linen ("American Linen"), for unlawfully discriminating against him on the basis of his disability – a back injury – in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (the "ADA"). Valadez has also brought a retaliation claim under Illinois law against American Linen alleging that he was unlawfully terminated in retaliation for bringing a workers' compensation claim against the company. Before the court are the parties' respective motions for summary judgment. In his motion for summary judgment, Valadez claims that the undisputed facts establish that he is entitled to relief on his discrimination and retaliation claims as a matter of law. American Linen argues that it is entitled to summary judgment on Valadez's ADA claims because the undisputed facts show that Valadez is not a "qualified individual with a disability" within the meaning of the ADA. Because the court agrees that Valadez is not a "qualified individual" under the ADA, and therefore is not entitled to the protection of that statute, Valadez's motion for summary judgment is denied and American Linen's motion for summary judgment is granted.

# BACKGROUND [1]

American Linen supplies linen to restaurants, banquet halls and hospitals throughout Cook County. In 1988, American Linen hired Valadez as a "route driver." Route drivers were responsible for delivering linens to American Linen's customers, picking up their soiled linens and returning the soiled linens to American Linen's plant in Chicago for cleaning. It is undisputed that the route driver position was physically demanding. Drivers had to be capable of constant heavy lifting and of driving 8-12 hours per shift. Often, the bags of soiled linen that route drivers had to carry weighed over 200 pounds. In 1997, Valadez was promoted to Assistant District Manager ("ADM"). The ADM position involved the same physically demanding tasks as the route driver position, but also required Valadez to supervise other route drivers and address customer complaints.

Valadez alleges that on May 1, 1998, he severely injured his back when he lifted a linen bag. On May 13, 1998, Valadez was diagnosed with a herniated disk. He attended physical therapy and received epidural injections to recover from his injury. Valadez alleges that, at least initially, he had trouble sleeping and walking and that his injury eventually caused him to suffer anxiety and depression.

Valadez spent the vast majority of the next two and a half years on medical leave, interrupted by intermittent efforts to return to work. Three months after the injury, in August of 1998, Valadez was cleared by his doctor to return to light duty work with no driving, heavy lifting, bending or stooping. Defendant offered Valadez light duty work on a temporary basis, assigning him to replace

---

[1] Although Valadez filed a response to American Linen's Local Rule 56.1 statement of facts, Valadez does not support his responses with references to the factual record. Therefore, Valadez's responses to American Linen's statement of facts are stricken and American Linen's factual allegations are deemed undisputed (unless contradicted by Valadez's own L.R. 56.1 statement of facts). *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).

strings on empty linen bags. Valadez alleges that stringing the bags was "a full time job" often assigned to injured workers. He claims that the working conditions during his light duty assignment were deplorable, alleging that he was (1) assigned to a work area that was unbearably hot, crowded with other workers and "infested with vermin," (2) forced to perform assignments that exceeded his physician's restrictions, (3) barred from using the elevator, (4) prevented from using the handicapped spot on the premises, and (5) punished for speaking with other employees. Valadez alleges that American Linen's harsh treatment was in retaliation for Valadez's workers' compensation claim against the company.[2] He claims that American Linen's retaliation caused him to have a seizure on August 26, 1998 that required him to be hospitalized.

A few days after his seizure, Valadez returned to medical leave which lasted from September of 1998 through June of 1999. During that prolonged leave, Valadez began seeing a back specialist, Dr. Frank Phillips, recommended by the attorneys prosecuting Valadez's workers' compensation claim. Dr. Phillips diagnosed Valadez with a herniated disk and recommended that Valadez continue physical therapy.

In addition to seeing Dr. Phillips, Valadez was instructed by American Linen to see Dr. Charles Mercier, a physician retained by American Linen's benefit administrator. Upon examining Valadez in May of 1999, Mercier found that Valadez exhibited "extensive false reporting to clinical testing" and noted that Valadez's other physicians also found so-called "Wadell signs," *i.e.* signs that Valadez wasn't being truthful about his symptoms. Mercier believed that "nobody in his right mind" would consider Valadez a candidate for surgery. He concluded that "there is no reliable clinical evidence of disability" and recommended that Valadez return to work without restrictions.

---

[2] Neither Valadez nor American Linen have made any factual allegations regarding when Valadez's workers compensation claim was filed or the status of that claim.

In June of 1999, Valadez was finally cleared to return to work by Dr. Phillips under restrictions that he not work more than four hours per day and not lift more than 15 pounds. Valadez returned to his light duty assignments where the harsh working conditions and verbal harassment allegedly continued.

On August 25, 1999, less than three months after Valadez resumed his light duty assignment, Dr. Phillips declared that Valadez should stop working so that he could undergo back surgery. A few days later, Phillips performed spinal fusion surgery on Valadez which caused Valadez to miss almost ten months of work.

After recovering from surgery, Valadez returned to work for the third and final time on April 10, 2000 with restrictions that he not lift more than 20 pounds or stand for over 45 minutes. Valadez alleges that, during this period, his back continued to "give out" and American Linen, once again, subjected him to harsh working conditions and harassment.

On October 2, 2000, Valadez received a "Functional Capacity Evaluation," to evaluate his ability to function in the workplace. The test concluded that Valadez could function at a "medium-heavy level with a 70 pound maximum lift knuckle to waist." Valadez was able to walk on a treadmill for a total of 150 minutes, climb a ladder for 30 minutes continuously and push and pull 300 pounds on a four wheel cart.

With those results in hand, Dr. Mercier determined that Valadez was ready to return to his regular duties without restriction. American Linen gave Valadez the option of returning as a route driver or as a maintenance person. Valadez chose to return to his old route driver position. However, after one and a half weeks as a route driver, Valadez's back gave out again. This time, Valadez's doctor placed Valadez on a permanent 40 pound lifting restriction and instructed Valadez to limit his driving to four hours per day.

Valadez asked American Linen for a light duty assignment, but American Linen responded that there was no light duty work available. Valadez also asked that American Linen "restructure" his position, allowing him to respond to customer complaints full-time and discontinuing his route driving responsibilities. American Linen refused. Valadez alleges that he was terminated in January of 2001. American Linen states that Valadez simply stopped showing up for work and was never terminated.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.*

American Linen argues that Valadez's ADA claim must be dismissed because he does not qualify for protection under that statute. The ADA prohibits discrimination "against a qualified individual because of the disability of such individual." 42 U.S.C. § 12112(a). There are two distinct types of discrimination barred by the ADA: (1) disparate treatment, and (2) failure to provide a reasonable accommodation. *See Sieberns v. Wal-Mart Stores, Inc.,* 125 F.3d 1019, 1022-23 (7th Cir. 1997). Regardless of which type of discrimination is alleged, plaintiffs seeking relief under the

ADA must prove that they are a "qualified individual with a disability," *i.e.* "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Therefore, in determining whether a disabled employee qualifies for protection under the ADA, the court evaluates whether that employee could carry out the essential functions of his position at the time the employer's allegedly discriminatory conduct occurred. *Ross v. Indiana State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1013 (7th Cir. 1998).

In this case, the undisputed facts reflect that Valadez is not a "qualified individual" within the meaning of the ADA. Valadez's job was physically demanding. The essential functions of his position are undisputed: American Linen required its route drivers and ADMs to drive approximately 8 hours per shift and to repeatedly lift linen bags that weighed up to 200 pounds. The undisputed facts reflect that Valadez is unable to perform those tasks. At the end of his tenure with American Linen, Valadez was on permanent work restrictions: he could not drive in excess of four hours per day or lift weights exceeding 40 pounds. In fact, Valadez maintains that, to this day, he suffers immobilizing back spasms that interfere with his ability to walk and he "has trouble getting of bed, going to church and getting around." Valadez is simply not qualified to perform the essential functions of his job without accommodation.

Valadez's ADA claim therefore hinges on the question whether he could perform the essential functions of his position <u>with</u> a reasonable accommodation. He argues that, at the time he was fired, American Linen could have accommodated his back injury by (1) giving him a handicapped parking spot, (2) making light duty work available on a permanent basis, or (3) restructuring his position by restricting his driving time to four hours a day and limiting his heavy lifting. However, none of those proposed accommodations can correctly be labeled "reasonable."

The handicapped parking space is not a reasonable accommodation because Valadez cannot prove that it would have enabled him to perform the essential functions of the job. *See Garza v. Abbott Labs.*, 940 F.Supp. 1227, 1239 (N.D. Ill. 1996). Valadez has offered no evidence that a handicapped parking space would have been an efficacious remedy for his disability. The undisputed facts establish that Valadez's performance difficulties stemmed from his inability to drive the required eight hours per day and to lift heavy bags of linen. While a handicapped parking space may have assisted him in some ways, Valadez does not explain how it would have remedied his inability to meet the requirements of his position. *See Pfeifer v. Caterpillar Inc.*, 98-C-542, 2000 WL 310312, *5 (N.D.Ill. March 24, 2000) (holding that speculation as to whether a proposed accommodation would have been effective is "not enough to defeat summary judgment").

Moreover, Valadez offers no support for his argument that American Linen was obligated to accommodate his injury by offering him permanent light duty work. Valadez has presented no evidence that light duty work was available on a permanent basis when he was fired.[3] Absent such evidence, Valadez's proposed accommodation must fail. *See McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997). The ADA does not require employers to create permanent light duty positions or transform temporary light-duty assignments into permanent positions to accommodate an injured employee who is unable to perform the essential functions of his position. *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002).

Valadez's argument that it would have been "possible" for American Linen to "restructure"

---

[3] Although Valadez has testified that he "suspected" that light duty "bag-stringing" work was available, he does not present any evidence that a permanent position was available and admits that, by the time he had returned to the route driver position, "someone else assumed the job of bag stringing."

his position to accommodate his injury is also without merit. The proper question is not whether a restructuring of his position was "possible." The question is whether a restructuring of the position is mandated by the ADA in this case. The court finds that it is not. The ADA does not require employers "to change the essential functions of a job to accommodate an employee," *Emerson v. Northern States Power Co.*, 256 F. 3d 506, 514 (7th Cir. 2001), and does not require the employer to create a new position that the employee is capable of performing. Valadez's proposed "restructuring" of his position would not have allowed him to perform his duties as a route driver. Rather, it would have created a new position and reallocated his driving responsibilities to another employee. This is not required by the ADA. *See Basith v. Cook County*, 241 F.3d 919, 929-30 (7th Cir. 2001).

In sum, the undisputed facts establish that Valadez was unable to perform the physically demanding requirements of his position with or without reasonable accommodation. Therefore, Valadez is not a "qualified individual" within the meaning of the ADA and, as a matter of law, cannot prevail on his discrimination claims under that statute. Valadez's ADA claim is dismissed. Since no federal claims remain, the court declines to exercise jurisdiction over Valadez's state law claim for retaliation. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("[T]he general rule is that once all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolve them on the merits").

## CONCLUSION

For the foregoing reasons, Valadez's motion for summary judgment is denied and American Linen's motion for summary judgment is granted.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: July 20, 2004